*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re F. L. BOLES, Minor.

UNPUBLISHED
March 12, 2019

No. 345064
Wayne Circuit Court
Family Division
LC No. 13-512197-NA

Before: BORRELLO, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Respondent-father[1] appeals an order terminating his parental rights under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm). Because the trial court properly found a statutory basis for termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and termination was in the child's best interests, we affirm.

## I. BACKGROUND

When respondent's child was born in 2012, she had cocaine, marijuana, and methadone in her system, requiring placement in the ICU for withdrawal symptoms and a court-ordered treatment plan for respondent-mother. Respondent-mother completed the treatment plan, and the case was closed in February 2013. In March 2013, the child's paternal grandmother found the child smelling of urine and rotten food, covered in vomit, and laying underneath covers that had feces on them. The room also contained dirty clothes, bloody towels, rotten food, drug paraphernalia, syringes, and prescription medications. On the same day, respondents were arrested for larceny of firearms, and they were both incarcerated. In April 2013, when the child was approximately seven months old, petitioner, the Department of Health and Human Services (DHHS), removed the child from the home.

---

[1] The trial court also terminated respondent-mother's parental rights, but she did not appeal that decision.

The trial court appointed the paternal grandmother the child's guardian in January 2015. Respondent remained incarcerated through March 2015. He made no attempt to see the child while he was out of prison from March 2015 through June 2015. In June 2015, respondent violated parole and returned to prison after he was convicted of larceny in a building, larceny of a firearm, and second-degree home invasion. The paternal grandmother's guardianship was terminated in May 2016, at her request, and the child was placed with a foster family. Respondent attended some classes in prison that addressed substance abuse, living without crime and drugs, and coping with anger. Respondent proposed a plan to be implemented after his release from prison. He planned to find a job, take college classes, and follow the treatment plan to be able to reunify with the child. Respondent remained incarcerated, however, and his earliest release date was in June 2018.

DHHS sought to terminate respondent's parental rights in March 2018. Although the trial court found that respondent's plan to reunify with the child was well-articulated and sincere, it also found that respondent would not be able to execute this plan in a reasonable amount of time. Accordingly, the trial court found statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (g), and (j). The trial court further found that termination of respondent's parental rights was in the child's best interests. Accordingly, the trial court ordered termination of respondent's parental rights.

## II. DISCUSSION

On appeal, respondent challenges the trial court's findings that statutory grounds for termination existed and that termination was in the child's best interests. "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). This Court also reviews for clear error the trial court's best-interest determination. *Id*. at 713. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

### A. STATUTORY GROUNDS

Petitioner must prove by clear and convincing evidence that a statutory basis for termination exists. *In re White*, 303 Mich App at 713. "Only one statutory ground for termination need be established." *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012). In this case, we affirm the trial court's finding that termination of respondent's parental rights was proper under MCL 712A.19b(3)(c)(*i*), which provides for termination of parental rights under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The parties do not dispute that 182 days or more elapsed since the issuance of the initial dispositional order. Rather, the parties dispute whether respondent would be able to rectify the conditions that led to the adjudication within a reasonable time considering the child's age.

Incarceration of a respondent is not, on its own, grounds for termination. *In re Mason*, 486 Mich 142, 160; 782 NW2d 747 (2010). However, a respondent's failure to comply with a treatment plan, combined with a respondent's incarceration for a significant portion of the child protective proceedings, may show that the respondent is unable to provide proper care for the child. *In re Frey*, 297 Mich App 242, 246-247; 824 NW2d 569 (2012).

In this case, the trial court's primary concern was the length of time it would take respondent to comply with the treatment plan before the child could be returned to respondent. The trial court's concern was well-founded, considering the totality of respondent's history relative to the young child's life. Respondent agreed that he had only been a part of the child's life for her first seven months, and she was nearly six years old at the time of the bench trial in May 2018. Respondent was incarcerated for all but 10 months of the child's life. For the two or three months respondent was not incarcerated from March 2015 to June 2015, he admitted that he did not provide for the child's care during this time. Although the child's grandmother would not allow respondent to have contact with the child while she was in the grandmother's care unless respondent spoke to the caseworker first, the record contains no evidence that respondent asked the caseworker to facilitate communication with the child when he was not incarcerated. Rather, while the child was in the grandmother's care, respondent only contacted her to stay updated about the child, not to arrange visits or provide for the child's care. Further, when respondent was released from prison in March 2015, he called his mother for a ride, but he did not ask about the child. In addition, respondent admitted that he did not contact the case manager when he was released and that he did not visit the child, stating that he spoke with her over the phone only. Respondent later testified that he mailed cards and letters for the child to the caseworker and to his mother. The caseworker, however, testified that respondent wrote only two or three letters, and the last one was sent in June 2017. Accordingly, respondent's stated intentions to follow through with the caseworker and build a relationship with the child ring hollow.

Regarding respondent's compliance with the treatment plan, respondent completed some classes while in prison on topics regarding substance abuse, living without crime or drugs, and coping with anger. In addition, respondent testified to a detailed plan following his release on parole that included a child-friendly residential treatment program, finding a job, and going back to college. However, respondent placed no timeline on the plan. Moreover, respondent was not released on parole in February 2018 as he anticipated, and this raised an additional concern about how much longer he would be incarcerated. Respondent's efforts to take classes in prison and formulate a plan for his release, however well-intentioned, do not demonstrate that he would be able to improve his circumstances in a reasonable amount of time, given the child's age and how little of the child's life he was involved in thus far. Accordingly, the trial court did not clearly err by finding that respondent would not be able to rectify the conditions that led to the

-3-

adjudication within a reasonable amount of time considering the child's age. This statutory basis alone is sufficient to support the termination of respondent's parental rights, *In re Gonzales/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015), and we do not address the other two statutory grounds found by the trial court.

## B. BEST INTERESTS

"[O]nce a statutory ground is established, a parent's interest in the care and custody of his or her child yields to the state's interest in the protection of the child." *In re Foster*, 285 Mich App 630, 635; 776 NW2d 415 (2009). After finding statutory grounds for termination, "the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App at 40. At the best-interest stage, the focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013). In making a best-interest determination, the trial court "may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). Other factors to consider may include "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child['s] well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

In this case, the caseworker testified that respondent was not bonded with the child. Respondent also admitted that he was not involved in the child's life after the first seven months. Regarding the child's progress, the caseworker testified that the child's speech delay improved after she went into foster care and that her progress with the current foster family was so great that she no longer needed individual counseling. The caseworker also testified that the child was thriving and bonded with the foster family—a family she regarded as her own mother, father, and siblings. Finally, respondent admitted that returning the child to his care soon would not be in her best interests. In sum, the trial court did not clearly err by finding that termination of respondent's parental rights was in the child's best interests.

We affirm.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron